

THIS OPINION
OVERRULES OPINION
NO. _Jm 143_

# The Attorney General of Texas

September 12, 1986

**JIM MATTOX**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

---1 Texas, Suite 700
ston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. Lawrence K. Pettit
Chancellor
University System of South Texas
P. O. Box 1238
Kingsville, Texas 78363

Opinion No. JM-543

Re: Whether a state university may establish a "cafeteria plan" under section 125 of the Internal Revenue Code

Dear Mr. Pettit:

You ask whether the University System of South Texas may establish an employee benefit plan of the type described as a "cafeteria plan" in section 125 of the Internal Revenue Code. Attorney General Opinion JM-143 (1984) determined that a community college had authority under article 3.50-3 of the Insurance Code to establish a "cafeteria plan" consisting of various taxable and nontaxable fringe benefits in the area of life, accident and health, and disability insurance. Since state universities are also authorized to contract for insurance coverage under article 3.50-3 of the Insurance Code, see Attorney General Opinion MW-215 (1980), you believe that the reasoning and result of Attorney General Opinion JM-143 will apply to the University System of South Texas. Section 125 of the Internal Revenue Code (I.R.C.) has, however, been amended since Attorney General Opinion JM-143 was issued. See Deficit Reduction Act of 1984, Pub. L. No. 98-369, §531(b)(1), (4)(A), 98 Stat. 881 (1984). Your question must be addressed in relation to the present version of section 125.

A "cafeteria plan" as defined by section 125 of the Internal Revenue Code is an employee benefit plan which offers employees a choice between cash and nontaxable fringe benefits. I.R.C. §125(d); 26 C.F.R. §1.125-2T. If the statutory conditions are met, the nontaxable benefits may be excluded from gross income even though the employee has received them in lieu of cash compensation. Id. See also H.R. Rep. No. 432, pt. II, 98th Cong., 2d Sess., 1608-09, reprinted in 1984 U.S. Code Cong. & Ad. News 698, 1232-33. Section 125 of the code states in part:

> (a) In general. Except as provided in subsection (b), no amount shall be included in the gross income of a participant in a cafeteria plan solely because, under the plan, the participant may choose among the benefits of the plan.

(b) [Exception where plan discriminates in favor of highly compensated individuals and key employees]. ·

(c) [Discrimination further defined].

(d) Cafeteria plan defined.  For purposes of this section --

(1) In general.  The term 'cafeteria plan' means a written plan under which --

(A) all participants are employees, and

(B) the participants may choose among 2 or more benefits consisting of cash and statutory nontaxable benefits.

(2) [Deferred compensation plans excluded].

(e) [Highly compensated participant and individual defined].

(f) Statutory nontaxable benefits defined.  For purposes of this section, the term 'statutory nontaxable benefit' means any benefit which, with the application of subsection (a) is not includible in the gross income of the employee by reason of an express provision of this chapter [26 U.S.C.S. §§1 et seq.] (other than section 117, 124, 127, or 132 [26 U.S.C.S. §117, 124, 127, or 132]).  Such term includes any group term life insurance which is includible in gross income only because it exceeds the dollar limitation of section 79 [26 U.S.C.S. §79].

(h) [reporting and recordkeeping requirements].

(i) [regulations]. (Emphasis added).

I.R.C. §125.  Amendments of particular significance to your question are underlined.

As the "cafeteria plan" is now defined, it must offer employees a choice between cash compensation and certain nontaxable fringe benefits I.R.C. §125(d)(1); 26 C.F.R. §1.125-2T; H.R. Rep. No. 432, pt. II, 98th Cong., 2d Sess., 1608-09, reprinted in 1984 U.S. Code Cong. & Ad. News 698, 1232-33; H.R. Conf. Rep. No. 861, 98th Cong., 2d Sess., 1173-74, reprinted in 1984 U.S. Code Cong. & Ad. News 1445,

1861-62. Moreover, optional insurance coverages in an amount in excess of $50,000, usually includible in gross income, is treated as a nontaxable benefit when offered in a cafeteria plan. I.R.C. §125(f); see I.R.C. §79.

The Internal Revenue Service has issued a temporary regulation on cafeteria plans. According to information published by IRS in the Federal Register, taxpayers may rely on this temporary regulation pending the issuance of final regulations, but it is not intended to address all issues raised by the amendments to section 125 of the Internal Revenue Code. 51 Fed. Reg. 4318 (1986). The temporary regulation on cafeteria plans states in part:

> Generally, for cafeteria plan years beginning on or after January 1, 1985, a cafeteria plan is a written plan under which participants may choose among two or more benefits consisting of cash and certain other permissible benefits . . . a cafeteria plan may offer participants the opportunity to purchase, with after-tax employee contributions, coverage under a group-term life insurance plan (section 79), coverage under an accident or health plan (section 105(e)), coverage under a qualified group legal services plan (section 120), or coverage under a dependent care assistance program (section 129). (Emphasis added).

The cafeteria plan described in Attorney General Opinion JM-143 (1984) allowed employees to choose between taxable and nontaxable benefits. Under present law, the cafeteria plan must offer the employee a choice between cash and certain nontaxable benefits. Under the quoted regulations, an employee's participation in a nontaxable benefit offered in a cafeteria plan may be funded by a salary deduction. 26 C.F.R. §1.125-2T; see 10 Thurgood Marshall L. Rev. 522, 532 (1985).

Article 3.50-3 of the Insurance Code requires state universities to provide basic life, accident, and health insurance coverage to employees. Ins. Code art. 3.50-3, §§2(a)(b), 11. Standards for basic coverage are developed by an administrative council established under section 4 of the statute. Section 11 of article 3.50-3 provides that each active full-time employee shall be automatically protected by a basic plan of insurance coverage, unless he waives basic coverage or chooses optional coverage. Section 11 makes the following provision for premium payments:

> If the cost of an active employee's basic coverage exceeds the amount appropriated by the legislature for an employee, the institution must provide

> optional coverage at no cost to the employee. <u>If</u>
> <u>the employee chooses basic coverage rather than</u>
> <u>optional coverage, the institution may deduct from</u>
> <u>the monthly compensation of the employee up to</u>
> <u>one-half the amount that exceeds the state's con-</u>
> <u>tribution for an employee</u>, and the institution
> shall pay the difference. . . . (Emphasis added).

Thus, it is possible that basic coverage may be partially funded by a deduction from the employee's salary. <u>See also</u> Ins. Code art. 3.50-3, §§12, 17.

Article 3.50-3 of the Insurance Code also authorizes the governing board of a state university to "provide such additional or optional insurance programs and coverages as it deems desirable for its employees." Ins. Code art. 3.50-3, §4(b)(4)(F). The Administrative Council has issued the following regulation: "Provisions shall be made for the payroll deduction for premiums of the optional coverage." 19 T.A.C. §25.34(c).

The governing body of a university may use its authority under section 4(b)(4)(F) of article 3.50-3 and rule 19 T.A.C. section 25.34(c) to offer employees

> the opportunity to purchase, with after-tax
> employee contributions, coverage under a group-
> term life insurance plan (section 79), [or]
> coverage under an accident or health plan (section
> 105(e)). . . .

26 C.F.R. §1.125-2T.

You have not inquired about authority to include group legal services or dependent care assistant payments in a cafeteria plan. We do not address this question; however, we note that the governing body of a university may not make a deduction from the compensation of an employee paid from state funds unless the deduction is authorized by law. <u>See</u> V.T.C.S. art. 6813e.

You have not submitted a plan to us and we express no opinion as to the details of such a plan. A cafeteria plan must comply with the relevant code provisions and regulations. We also point out that 26 C.F.R. section 1.125-2T is a temporary regulation and that Congress is at present engaged in a major revision of the Internal Revenue Code. <u>See</u> U.S. Code Cong. & Ad. News, August 1986. Attorney General Opinion JM-143 (1984) does not describe cafeteria plans as limited by present law and should be disregarded.

## S U M M A R Y

The University System of South Texas has authority under article 3.50-3 of the Insurance Code to establish an employee benefit plan whereby employees are offered an opportunity to purchase with after-tax employee contributions coverage under a group-term life insurance plan or an accident or health plan. This plan may qualify as a "cafeteria plan" under section 125 of the Insurance Code if all other conditions imposed by federal law and regulation are implemented. Attorney General Opinion JM-143 (1984) does not describe "cafeteria plans" as they now exist and should be disregarded.

Very truly yours,

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General